COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Raphael

DAVID WAYNE DAVIS, JR.

v.     Record No. 1345-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 19, 2024

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

(James S. Panagis, Jr.; Wolcott Rivers Gates, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Suzanne Seidel Richmond,
Assistant Attorney General, on brief), for appellee.

David Wayne Davis, Jr., appeals his conviction for malicious wounding in violation of Code

§ 18.2-51. He challenges the sufficiency of the evidence to support his conviction. Davis argues

that the Commonwealth did not establish beyond a reasonable doubt that he caused bodily injury to

the victim. He further contends that the Commonwealth failed to prove that he acted with the

requisite intent or malice. For the following reasons, we affirm the conviction.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously holds that
oral argument is unnecessary because "the appeal is wholly without merit." *See* Code
§ 17.1-403(ii)(a); Rule 5A:27(a). In addition, "the dispositive issue or issues have been
authoritatively decided," and the appellant "has not argued that the case law should be
overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

On the evening of May 7, 2022, John Shourds went to a bar, where he met a longtime family friend, Emily Clouser. Shourds walked Clouser home and returned to the bar, where he encountered Davis and Joseph Benbenek. They told Shourds that they "saw [him] with" Clouser and called him an "old fucking pervert." Shourds told them to "fuck off and mind [their] own business."

When Shourds approached the bar's entryway, Davis and Benbenek blocked him from entering. The three argued for several minutes. Davis then "lunged" at Shourds with one hand raised. Shourds quickly hit him to keep from being hit himself and knocked Davis to the ground.

Benbenek then moved toward Shourds, who retreated and said that he did not "want to fight." Davis and Benbenek both grabbed Shourds, and the trio "tussled" briefly. Shourds pushed Davis away, and Benbenek struck Shourds in the head with a beer bottle. Shourds collapsed to his knees, and both Davis and Benbenek kicked him. Davis "repeatedly stomped" his leg for "maybe thirty seconds."

The bartender, who was outside cleaning the patio, heard yelling and saw Davis and Benbenek "standing over" Shourds. She yelled, and Davis and Benbenek walked away. Shourds knew that his right leg was "broken badly" and told the bartender that he needed an ambulance. When she went inside to call for help, Davis returned. Davis cursed at Shourds, "kicked [him] in the gut," and said, "look at you now." Someone yelled, and Davis fled.

---

[2] On appeal, the reviewing court views "the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323 (2018) (per curiam)). This standard further requires that court "to 'accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence.'" *Id.* (quoting *Brown v. Commonwealth*, 278 Va. 523, 527 (2009)).

An ambulance transported Shourds to the hospital. Shourds's fibula was fractured. The week after the attack, doctors performed surgery, inserting a permanent titanium plate.

Davis was charged with malicious wounding. At trial, Shourds testified that after he was hit with the beer bottle and fell to the ground, Davis and Benbenek both kicked him. According to Shourds, Davis stomped his leg multiple times, shattering his fibula. Shourds stated that he knew "the moment . . . when [his] leg was broken" because he felt immediate "excruciating pain."

An eyewitness testified that he saw Davis kick Shourds while he was on the ground. An officer with the Virginia Beach Police Department testified that when she arrived at the bar, Shourds was on the ground and bleeding from the top and back of his head. She saw a shattered glass beer bottle "underneath . . . and around him."

At the close of the Commonwealth's case, Davis made a motion to strike, arguing that the Commonwealth failed to prove malice because Shourds started the violence. The trial court denied the motion.

Benbenek and Davis testified for the defense, presenting a different version of events. Benbenek stated that after the three men started arguing, Shourds escalated the situation into violence by punching Davis in the face and knocking him to the ground. According to Benbenek, he intervened only to break up the ensuing fight. He said that he saw Davis kick Shourds only once and that was in the arm. Davis testified that he could not remember much from that night and acknowledged that he was highly intoxicated. Even so, he too said that after the three men argued, Shourds instigated the physical violence by hitting him.

After the close of all the evidence, Davis urged the trial court to reject Shourds's testimony. He suggested that the evidence supported the inference that Shourds injured his leg while they grappled. Davis argued that the Commonwealth had not proven that he intended to injure Shourds's leg. He also articulated the legal standard for heat of passion and contended that his "actions were

justified because he defended himself." Davis concluded by asking the trial court to convict him of assault and battery instead of malicious wounding.

The trial court found that the attack in this case was "vicious," "excessive," and "malicious." Accordingly, the trial court convicted Davis of malicious wounding and sentenced him to ten years of incarceration with all but one year and six months suspended.

ANALYSIS

"A sufficiency argument challenges the trial court's factual determinations and will only succeed if the trial court's judgment was plainly wrong or unsupported by the evidence." *Alston v. Commonwealth*, 77 Va. App. 639, 647 (2023). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, for an appellate court, '[t]he only "relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)). "If there is evidentiary support for the conviction, '[this] court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016)).

"The malicious wounding statute states in relevant part that it is a crime to 'maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020)

(quoting Code § 18.2-51). Davis contends that the Commonwealth failed to prove that he caused Shourds bodily injury, that he had the requisite intent, or that he acted maliciously. We consider those issues in turn, applying the well-established standard-of-review principles.

## I. Bodily Injury

Davis argues that the Commonwealth did not prove that he caused the injury to the victim's leg.[3] He suggests that Shourds's testimony was inherently incredible, noting that it was inconsistent with statements Shourds made to emergency personnel at the scene.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable [people] ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Based on this record, under the applicable standard of review, a rational factfinder could conclude that Davis caused the injury to Shourds's leg. The uncontested medical evidence established that Shourds suffered a fracture to his right fibula that required corrective surgery and the insertion of permanent hardware. Shourds testified that, after he was struck in the head with

---

[3] Bodily injury, as used in Code § 18.2-51, "can be '*any bodily hurt* whatsoever' caused *by any means*." *Perkins*, 295 Va. at 328 (quoting *Bryant v. Commonwealth*, 189 Va. 310, 316 (1949)). Davis does not contest that Shourds's broken right fibula satisfies this definition.

a beer bottle and fell to the ground, Davis stomped on his leg for about thirty seconds. Moreover, he stated that when Davis stomped on his leg, he felt excruciating pain as his fibula fractured. Shourds acknowledged that he had said previously that his leg "gave out" when he tried to stand. But a rational factfinder could conclude that this statement was entirely consistent with his testimony that he suffered a fractured fibula when Davis stomped his leg and did not indicate, instead, that he fractured his fibula merely while trying to stand on wet ground. Nothing about Shourds's testimony is so contrary to human experience as to render it inherently incredible.

Davis attempted to impeach Shourds through cross-examination. Shourds admitted that he had drunk a lot of alcohol the night of the altercation. While he acknowledged that the ground outside was wet, he stated that he wore shoes with "very good traction." Defense counsel asked Shourds if he agreed that he initially did not "mention[] anybody stepping on [his]" foot or leg. Shourds responded, "I think that I said that my leg was stomped from the very beginning." *See Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) ("The trier of fact is 'free to believe or disbelieve, in part or in whole, the testimony of any witness.'" (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc))).

Davis also presented a fundamentally different version of the incident through Benbenek's testimony and his own. Benbenek testified that after the three men argued for several minutes, Shourds instigated the violence by punching Davis in the face and knocking him to the ground. Benbenek further said that Shourds then went inside the bar. According to Benbenek, about twenty minutes later, he found Shourds and Davis fighting. Benbenek alleged that Shourds grabbed Davis "by the shirt and sl[ung] him" to the ground and then punched Benbenek in the face. Benbenek testified that Davis and Shourds wrestled on the ground and Benbenek kicked Shourds in the back to break up the fight. According to Benbenek, before they walked away, Davis kicked

- 6 -

Shourds once in the arm. Davis testified that, although he could not remember much from that night, Shourds initiated the violence. The trial court, however, was entitled to accept the Commonwealth's evidence and reject the testimony of Benbenek and Davis. *See Washington*, 75 Va. App. at 616.

In weighing the testimony alongside the medical and photographic evidence, the trial court credited the account given by Shourds. The record supports the trial court's credibility determination. As a result, we hold the evidence is therefore sufficient to prove that Davis caused the injury to Shourds's leg.

## II. Intent

Davis argues that the Commonwealth failed to prove beyond a reasonable doubt that he acted with the requisite intent under Code § 18.2-51.

To obtain a conviction under the malicious wounding statute, the Commonwealth must prove that the defendant acted "with the intent to maim, disfigure, disable, or kill." *Fletcher*, 72 Va. App. at 506 (quoting Code § 18.2-51). Further, "[t]o be guilty under Code § 18.2-51, a person must intend to permanently, not merely temporarily, harm another person." *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Johnson v. Commonwealth*, 53 Va. App. 79, 101 (2008)).

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (per curiam) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). In determining a defendant's intent, a factfinder may consider his actions and statements, and may "infer that every person intends the natural, probable consequences of his . . . actions." *See id.* (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011)). Accordingly, a court examining the sufficiency of the evidence should "consider not only the method by which a victim is wounded,

but also the circumstances under which that injury was inflicted." *Id.* (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 260 (2013)). And, "[w]hether the required intent exists is generally a question of fact for the trier of fact." *Smith v. Commonwealth*, 72 Va. App. 523, 536 (2020) (alteration in original) (quoting *Brown v. Commonwealth*, 68 Va. App. 746, 787 (2018)).

Viewed in the light most favorable to the Commonwealth, the evidence established that Benbenek struck Shourds in the head with a beer bottle, knocking him to the ground. After Shourds fell, Davis repeatedly stomped on Shourds's leg, breaking it and causing permanent damage. Additionally, the factfinder could consider Davis's actions after he fractured Shourds's leg. *See Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). Davis saw Shourds on the ground in pain, cursed at him, and kicked him in the stomach. The trial court, as the finder of fact, was entitled to conclude from the evidence as a whole that Davis acted with the intent to both maim, disfigure, or disable Shourds and to permanently harm him. *See Perkins*, 295 Va. at 332.

Consequently, the evidence was sufficient to prove that Davis acted with the requisite intent under Code § 18.2-51.

### III. Malice

Finally, Davis contends that the evidence did not support the finding that he acted with malice and did not exclude his theory of the case that he acted in the heat of passion.

"The element in malicious wounding that distinguishes it from unlawful wounding is malice . . . ." *Williams v. Commonwealth*, 64 Va. App. 240, 248 (2015) (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). "Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Alston*, 77 Va. App. at 648 (quoting *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012)). It "may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). Of course, the Commonwealth may prove that a

defendant acted maliciously through circumstantial evidence. *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019). In conducting its review, this Court "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Moseley*, 293 Va. at 463 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "Whether or not an accused acted with malice is generally a question of fact . . . ." *Palmer*, 71 Va. App. at 237 (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)).

"Deliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." *Williams*, 64 Va. App. at 249. "[Heat of passion] excludes malice when provocation reasonably produces" fear, rage, or a combination of both "that causes one to act on impulse without conscious reflection." *See Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (alteration in original) (quoting *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015)). Therefore, when a defendant injures a victim in the heat of passion, he may be convicted of unlawful, but not malicious, wounding. *See Williams*, 64 Va. App. at 248.

Davis contends that, because Shourds initiated the first physical contact by punching him, all Davis's subsequent actions "were shrouded by heat of passion and could not be done maliciously." The trial court found beyond a reasonable doubt that Davis acted with malice and not in the heat of passion. We conclude that the evidence, viewed in the light most favorable to the Commonwealth, supports this conclusion. Based on Shourds's testimony, the trial court could reasonably find that Davis and Benbenek initiated the altercation by confronting Shourds

as he tried to enter the bar. It could further find that Shourds struck Davis only after Davis lunged toward him with his arm raised, after which Shourds backed away, stated that he did not want to fight, and was pursued by Davis and Benbenek. Finally, the court could conclude that after Benbenek knocked Shourds down with a beer bottle, Davis repeatedly stomped on Shourds's leg, fracturing his fibula. Davis's intentional actions further support the finding that he acted deliberately rather than impulsively in the heat of passion. This conclusion is bolstered by the fact that immediately *after* stomping on Shourds, Davis walked away and then returned, kicking him again and saying, "[L]ook at you now." Given these circumstances, a factfinder could determine, as the trial court did here, that Davis's actions were malicious.[4] *See Garrick*, 303 Va. at 182 ("An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not.").

CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that Davis committed malicious wounding in violation of Code § 18.2-51. Therefore, we affirm the trial court's judgment.

*Affirmed.*

---

[4] We also reject Davis's contention that the existence of malice is negated by his failure to possess or use a deadly weapon. Although malice *can* be inferred from the use of a deadly weapon, *see Watson-Scott*, 298 Va. at 256, the use of such a weapon is not *required* to prove malice, *see Burkeen*, 286 Va. at 259. Rather, "[m]alice is implied by law from any deliberate, willful, and cruel act against another." *Witherow*, 65 Va. App. at 566 (alteration in original) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982)).

- 10 -